IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| JAY VARRONE, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 7:21-CV-00024 (WLS) |
| HOSPITAL AUTHORITY OF VALDOSTA AND LOWNDES COUNTY, GEORGIA, d/b/a SOUTH GEORGIA MEDICAL CENTER, | : |
| Defendant. | : |

## ORDER

Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 12.) Therein, Defendant contends that they are entitled to summary judgment on Plaintiff's Age Discrimination Claim, Plaintiff's Age Discrimination Retaliation Claim, and Plaintiff's Georgia Whistleblower Act claims. (*Id.*) For the following reasons, Defendant's Motion for Summary Judgment (Doc. 12) is **GRANTED in part and DENIED in part as MOOT**.

### RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this action on March 25, 2020, by filing a Complaint in the Superior Court of Lowndes County, Georgia. (Doc. 1-2.) On June 26, 2020, Defendant filed its Answer and Motion to Dismiss Plaintiff's Complaint. (Doc. 1-3.) After briefing on Defendant's Motion to Dismiss had been completed, the Superior Court of Lowndes County held a hearing on October 29, 2020. (Doc. 1 ¶ 8.) Thereafter the Superior Court denied Defendant's Motion to Dismiss and granted Plaintiff's Motion to Amend the Complaint. (Doc. 1 ¶ 9 & 10.)

Plaintiff filed his Amended Complaint on February 10, 2021. (Doc. 1-11.) In that Amended Complaint, Plaintiff added a claim under the Age Discrimination Employment Act

1

("ADEA"), 29 U.S.C. § 621 et seq. (Doc. 1-11.) Defendant subsequently removed this action to this Court on March 3, 2021. (Doc. 1.)

A year and a day later, on March 4, 2022, Defendant filed the presently pending Motion for Summary Judgment. (Doc. 12.) Therein, Defendant contends that they are entitled to summary judgment on Plaintiff's Age Discrimination Claim, Plaintiff's Age Discrimination Retaliation Claim, and Plaintiff's Georgia Whistleblower Act claims. (*Id.*) Plaintiff filed a Response in opposition (Doc. 22) on April 9, 2022. Therein, Plaintiff withdrew his ADEA-based retaliation claim, but contended that summary judgment was not appropriate on Plaintiff's Age Discrimination Claim or Plaintiff's Georgia Whistleblower Act Claim. (*Id.*) Defendant filed their Reply on May 9, 2022. (Doc. 41.) Accordingly briefing has now concluded and Defendant's Motion for Summary Judgment (Doc. 12) is ripe for disposition.

## STANDARD OF REVIEW

### I. Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). " 'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.' " *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant – in this case Defendant – bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009).

The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. After the movant has met their burden, the Court must then determine "whether the evidence [submitted by Plaintiff] presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citation omitted). The nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. While a Plaintiff can use their affidavit to meet this burden, Fed. R. Civ. P. 56(c)(4), the affidavit must "designate 'specific facts showing that there is a genuine issue for trial,' " and "he may not merely rest on his pleadings." *Graham*, 193 F.3d at, 1282. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Vicks v. Knight*, 380 F. App'x 847, 851 (11th Cir. May 26, 2010) (citation omitted). To avoid summary judgment, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form.").

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Amended Complaint (Doc. 1-11); Defendant's Answer to the Complaint (Doc. 2.); and the Parties' Statements of Material Facts (Docs. 12-2, 22-1 & 41-1). Where relevant, the factual summary also includes undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and

3

any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56. *Matsushita*, 475 U.S. at 587-88.

Defendant, the Hospital Authority of Valdosta and Lowndes County, Georgia, doing business as South Georgia Medical Center ("SGMC"), operates a hospital in Southwest Georgia. (Doc. 1-11 ¶ 4 & Doc. 2.) At some point in March 2018, Defendant hired Plaintiff as their new Director of Supply Chain. (Doc. 12-2 ¶ 1.) When Plaintiff was hired by SGMC, he was sixty-two (62) years old. (Doc. 12-2 ¶ 2.) The decision to hire Plaintiff was made by SGMC's Chief Financial Officer, Grant Byers, in conjunction with the Hospital's then Chief Executive Officer, Ross Berry. (Doc. 12-2 ¶ 3.) At the time Plaintiff was hired, Grant Byers was fifty-nine (59) years old. (Doc. 12-2 ¶ 4.)

As the Director of Supply Chain Plaintiff was responsible for acquiring goods and services for SGMC at the lowest possible cost, identifying possible saving opportunities and supervising approximately twenty (20) employees. (Docs. 12-2 ¶ 7 & 22-1 ¶ 7.) In fulfilling his goods acquisition responsibilities Plaintiff worked closely with a group purchasing organization, Vizient. (Docs. 12-2 ¶ 11-12 & 22-1 ¶ 11.) SGMC's relationship with Vizient predated Plaintiff's hiring, but Plaintiff also had a preexisting professional relationship with Vizient from two prior hospitals. (Docs. 12-2 ¶ 11-12 & 22-1 ¶ 11.) SGMC contracted with Vizient to identify areas of increased spending and assist SGMC by negotiating contracts that would capture savings in those areas. (Doc. 12-2 ¶ 12.)

To incentivize savings, SMGC agreed to provide Plaintiff with an annual bonus, based on the amount of savings Plaintiff obtained for the hospital. (Docs. 12-2 ¶ 8 & 22-1 ¶ 8.) While this bonus was ostensibly capped at $33,000, Plaintiff was awarded a bonus of $49,500 his first year based on the amount of money Plaintiff was allegedly able to save SGMC. (Docs. 12-2 ¶ 9 22-1 ¶ 9.) Similarly, to Plaintiff, Vizient's compensation package was "based on the amount of savings it brought in." (Docs. 12-2 ¶ 13 & 22-1 ¶ 13.) During the course of Plaintiff's employment, the amount of contracts negotiated by Vizient increased sharply.

At some point in either August or September 2019, SGMC's Director of Internal Audits, Amanda Nijem, met with a member of her team to discuss an invoice from Vizient.[1]

---

[1] The Court notes for the purposes of the record that Plaintiff was not a party to these initial audits of Vizient's billing practices. (Doc. 22-1 ¶ 14.)

4

(Doc. 12-2 ¶ 14.) At that meeting, Mrs. Nijem expressed skepticism that Vizient could have brought in the amount of actual savings claimed in the timeframe suggested. (Doc. 12-2 ¶ 15.) Upon investigation it was determined that Vizient's claimed savings were calculated utilizing "potential" savings opportunities for initiatives that SGMC may or may not have ended up implementing. (Doc. 12-2 ¶ 16.) When Mrs. Nijem relayed that information to SGMC's Chief Financial Officer, Grant Byers, Byers requested that Mrs. Nijem perform an internal audit of Vizient because Vizient was only to be paid for realized savings, not projected or speculative savings. (Doc. 12-2 ¶ 16-18.) That audit revealed that Vizient had been invoicing SGMC based on its projected savings versus actual savings. (Doc. 12-2 ¶ 20.)[2] The Court notes for the purposes of the record that during the Vizient audit, Plaintiff expressed frustration, claiming that he had been "sandbagged" in meetings. (Docs. 12-2 ¶ 22 & 22-1 ¶ 22.)

During the course of SGMC's audit of Vizient Mrs. Nijem met with Byers to discuss Plaintiff's bonus savings incentive. (Docs. 12-2 ¶ 23 & 22-1 ¶ 23.) During those meetings Mrs. Nijem expressed concern that Plaintiff's first year bonus of $49,500 had been improperly calculated utilizing Vizient's projected, but not realized savings. (*Id.*) Whether Plaintiff's first year bonus of $49,500 was improperly calculated utilizing projected, but not realized, savings, was never ascertained as Mrs. Nijem was unable to secure appropriate payment documentation from the accounts payable department before Plaintiff left SGMC's employ. (Docs. 12-2 ¶ 24 & 22-1 ¶ 24.)

Prior to the internal audit of Vizient, in performance of his responsibilities as Director of Supply Chain, Plaintiff identified SGMCs contract with Crown Health Care Laundry Services ("Crown Laundry") as a potential area for savings. (Doc. 12-2 ¶ 56.) Plaintiff worked with Vizient to re-negotiate Crown Laundry's contract, ultimately executing a new contract on October 11, 2018. (Doc. 12-2 ¶ 57.) That new contract expanded the notice period of the contract, in that it required SGMC to provide one hundred eighty (180) days' notice prior to terminating the agreement. (Doc. 12-2 ¶ 59.) The old Crown Laundry contract required only ninety (90) days' notice to cancel. (Doc. 12-2 ¶ 58.)

---

[2] The Court notes for the purposes of the record that the Parties disagree whether this was common practice within the industry or in compliance with SGMC and Vizients' contract. (Docs. 12-2 ¶ 20 & 22-1 ¶ 16-20.)

At the time that Plaintiff entered into the new contract with Crown Laundry, on behalf of SGMC, it is disputed whether Plaintiff had the authority to enter into contracts on SGMC's behalf.[3] (Docs. 12-2 ¶ 61 & 22-1 ¶ 61.) Whether Plaintiff had authority to enter into contracts on SGMC's behalf is relevant, because in 2019 Sam Allen, the Hospital Board Chairman, entered into a new laundry contract with an alternative laundry service company on October 22, 2019. (Docs. 12-2 ¶ 62 & 22-1 ¶ 62.)  At the time Mr. Allen entered into competing contract, Mr. Allen was not aware that Plaintiff had re-negotiated SGMC's contract with Crown Laundry and extended the Crown Laundry Contract's cancellation notice period. (Doc. 12-2 ¶ 63.) As a result of the competing contracts SGMC was contractually obligated to two different laundry providers at the same time and did not have the ability to immediately terminate either contract. (Docs. 12-2 ¶ 64 & 22-1 ¶ 64.)

Shortly thereafter, in November 2019, Plaintiff began reporting directly to Mr. Byers. (Doc. 12-2 ¶ 68.)[4] Mr. Byers instructed Plaintiff at this time that all issues were to be brought directly to Mr. Byers, and that Plaintiff was not to circumvent the reporting structure by taking issues directly to the CEO, Ronnie Dean, without going to Mr. Byers first. (Docs. 12-2 ¶ 70 & 22-1 ¶ 70.)

Despite these clear instructions, at some point, Plaintiff had a hallway conversation with Ronnie Dean regarding possible savings. (Docs. 12-2 ¶ 69 & 22-1 ¶ 69.)[5] Thereafter, on November 19, 2019, Mr. Byers discussed his disappointment with Plaintiff regarding Plaintiff committing SGMC to the Crown Laundry contract and Plaintiff's circumvention of the hospital's reporting structure. (Doc. 12-2 ¶ 71.) Plaintiff was subsequently issued a written warning on November 20, 2019, for signing the Crown Laundry contract without authorization and failing to input the renewal of that contract into SGMC's contract management system. (Docs. 12-2 ¶ 72 & 22-1 ¶ 72.)

---

[3] The Court notes for the purposes of the record that as to this factual dispute it makes a reasonable inference in Plaintiff's favor at this time.

[4] The Court notes for the purposes of the record that the change in who Plaintiff reported to on its face has nothing to do with the additional laundry contract. Rather, the change in reporting duties appears to be the result of personnel changes at SGMC. (Docs. 12-2 ¶ 6 & 22-1 ¶ 6.)

[5] The Court notes for the purposes of the record that Plaintiff admits that he had this conversation, but states that it was an impromptu meeting. (Doc. 22-1 ¶ 69.)

In response to this written warning, Plaintiff asked Mr. Schott – SGMC's former Chief Operating Officer – whether Plaintiff was being targeted for dismissal. (Doc. 14 at 111.) Mr. Schott answered Plaintiff's question in the affirmative and noted that he thought he was as well. (Doc. 14 at 111.) Mr. Schott indicated that Plaintiff was being targeted for dismissal due to Plaintiff "sticking [his] nose in areas they didn't' want." (Doc. 14 at 111.) This conversation apparently took place by November 20, 2019. (Doc. 14 at 110.)

Plaintiff and Mr. Byers were scheduled to meet the next day on November 21, 2019.[6] (Docs. 12-2 ¶ 77 & 22-1 ¶ 77.) In anticipation of that meeting, on November 11, 2019, Plaintiff had sent Mr. Byers an email with a memo that included a status report on ongoing matters within supply chain operations. (Docs. 12-2 ¶ 78 & 22-1 ¶ 78.) Immediately prior to the November 21, 2019, meeting, however, Plaintiff resent the same memo, with one additional item, "My Future at SGMC." (Docs. 12-2 ¶ 79 & 22-1 ¶ 79.)

At the beginning of the November 21, 2019, meeting Plaintiff alleges that he informed Mr. Byers that he knew he was being targeted for termination and that Defendants would not be able to intimidate Plaintiff into resigning as Plaintiff had just inherited some money. (Doc. 14 at 320.)[7] However, believing that he was being targeted for termination, Plaintiff provided Mr. Byers with a letter wherein Plaintiff indicated that he "would like to work with leadership to negotiate a mutually agreeable exit from my employment here." (Doc. 12-11.) Based on Plaintiff's representations in that letter, the November 21, 2019, meeting, and in a subsequent November 23, 2019 email correspondence indicating that "[w]e have a mutual desire to part company," Mr. Byers concluded that it was Plaintiff's intent to resign. (Doc. 12-2 ¶ 85.)

Accordingly, a final meeting was scheduled for November 26, 2019. (Doc. 14 at 248.) At the meeting Mr. Byers informed Plaintiff that they were there to "negotiate the terms of Plaintiff's exit." (Doc. 14 at 250.) In response, Plaintiff said "all right, fine," as that was what they had been talking about and he "was okay with that." (Doc. 14 at 250.) While Defendants

---

[6] The Court notes for the purposes of the record that it would appear that this meeting was scheduled before Plaintiff was issued a written warning for signing the Crown Laundry contract, allegedly without authorization, as well as before Plaintiff's conversation with David Schott.

[7] The Court notes for the purposes of the record that Defendants contend that Plaintiff voluntarily and verbally resigned at the November 21, 2019 meeting. (Docs. 12-2 ¶ 80 & 12-6 ¶ 11.)

7

made Plaintiff an offer, Defendants refused to accept Plaintiff's counteroffer, at which point Plaintiff was escorted out of the building. (Doc. 14 at 250.)

After Plaintiff left Defendant's employ, one Charlie Freeman was promoted to the role of interim Director of Supply Chain. (Docs. 12-2 ¶ 87 & 22-1 ¶ 87.) Mr. Freeman had previously been promoted by Plaintiff to the position of Purchasing Manager, and had previous work experience as Director of Supply Chain at another hospital. (Docs. 12-2 ¶ 88 & 22-1 ¶ 88.) Mr. Freeman was eventually offered the permanent Director of Supply Chain position at SGMC. (Docs. 12-2 ¶ 89 & 22-1 ¶ 89.) At that time, Mr. Freeman was thirty-eight (38) years old. (Docs. 12-2 ¶ 90 & 22-1 ¶ 90.) At no point did anyone suggest that Plaintiff's age was a factor in the end of his employment, and at no point did Plaintiff contend that he was being discriminated against on the basis of his age. (Docs. 12-2 ¶ 90-94 & 22-1 ¶ 90-94.)

## DISCUSSION

As stated *supra*, Defendant contends that they're entitled to summary judgment on Plaintiff's Age Discrimination Claim, Plaintiff's Age Discrimination Retaliation Claim, and Plaintiff's Georgia Whistleblower Act claims. (Doc. 12.) Given that Plaintiff has withdrawn their Retaliation Claim (Doc. 22 at 2), there are only two issues left for this Court to resolve. First, whether Defendant is entitled to summary judgment on Plaintiff's Age Discrimination Claim. Second, whether Defendant is entitled to summary judgment on Plaintiff's Georgia Whistleblower Act claims.

### I. Defendant is Entitled to Summary Judgment on Plaintiff's Age Discrimination Claim

Under the ADEA, it is unlawful for an employer to discharge an employee over the age of 40 because of his age. See 29 U.S.C. § 623(a)(1); *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (per curiam). To assert a claim under the ADEA, a plaintiff must show that his age was the but-for cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009). ADEA claims based on circumstantial evidence are analyzed under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of

8

discrimination. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). The employer then must respond with a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer successfully produces such a reason, the plaintiff must prove that the employer's reason was a pretext to mask unlawful discrimination. *Id.* Claims for age discrimination under the FCRA are analyzed using the same framework as age discrimination claims under the ADEA. *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) (per curiam)

In the present case, Defendant contends that they're entitled to summary judgment on Plaintiff's Age Discrimination Claim for two reasons. (Doc. 12-2 at 10.) First, it is Defendant's position that Plaintiff cannot make out a *prima facie* case of discrimination. (*Id.*) Second, even if Plaintiff was able to make out a *prima facie* case of discrimination, it is Defendant's position that Plaintiff cannot not show that Defendant's articulated legitimate reasons for terminating Plaintiff were pretextual. (*Id.*, at 12.) In response, Plaintiff contends that he can make out a *prima facie* case of discrimination, and that any reasons that Defendant profferd as an alternative reason for terminating Plaintiff were a pretext. (Doc. 22.)

**A. Plaintiff has Made Out a *Prima Facie* Case of Age Discrimination**

To make out a *prima facie* case of age discrimination a Plaintiff must show that: (1) he was a member of the protected group between age forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged. *Liebman*, 808 F.3d at 1298. In the present case, the only element in dispute is whether Plaintiff was subject to an adverse employment action. (Doc. 22 at 2.)

It is Defendant's position that Plaintiff was not subject to an adverse employment action, as Plaintiff experienced "absolutely no material change to the terms, conditions, or privileges of employment," as a result of the warnings Plaintiff recieved, and Plaintiff ultimately "voluntarily resigned" from his employment. (Doc. 12-1 at 11.) In response Plaintiff contends that he was subject to an adverse employment action because he had been placed on effective notice – through the issuance of warnings – that his employment would likely be coming to an end. (Doc. 22.) Plaintiff also contends that the November 20, 2019, letter in which Plaintiff indicated that he "would like to work with leadership to negotiate a mutually agreeable exit from my employment here" was not a letter of resignation. (Doc. 12-11.)

9

In the present case, Plaintiff has made out a *prima facie* case of age discrimination, because Plaintiff was subject to an adverse employment action in the form of his termination on November 26, 2019. While Defendant is correct that Defendant's disciplinary measures against Plaintiff – write ups and critical feedback – and Plaintiff's subjective fear of termination would not constitute an adverse employment action, Defendant is not entitled to summary judgment on the basis that Plaintiff has failed to make out the prima facie case of ADEA discrimination as a question of material fact persists regarding whether Plaintiff in fact resigned.

Questions of material fact persist as to whether Plaintiff in fact resigned because Plaintiff's November 20, 2019, letter could be construed as an offer to resign in exchange for an enhanced severance package.[8] (Doc. 12-11.) Plaintiff's letter could be construed as an offer to resign in exchange for an enhanced severance package as Plaintiff offered to continue to perform his duties while SGMC found his replacement, while expressing Plaintiff's desire to negotiate a mutually agreeable exit from his employment. (Doc. 12-11.) Plaintiff's letter also states that Plaintiff would "include an official resignation as part of an exit Agreement." (Doc. 12-11.) The interpretation of Plaintiff's letter as an offer to resign in exchange for an enhanced severance package is bolstered by the fact that at the November 26, 2019, meeting at which Plaintiff was terminated, the parties attempted to negotiate Plaintiff's exit. (Doc. 14 at 250.)

Accordingly, as Plaintiff has made out a prima facie case under the ADEA, summary judgment on that basis is not appropriate at this time.

### B. Defendant is Entitled to Summary Judgment as Plaintiff has not shown that Defendant's Articulated Reasons for Terminating Plaintiff were Pretextual.

As Plaintiff has made out a *prima facie* case of discrimination, and Plaintiff's ADEA claims are based on circumstantial evidence, the burden shifts to Defendant to respond with a legitimate, nondiscriminatory reason for its actions. *Turlington*, 135 F.3d at 1432. In the present case Defendant proffered the following nondiscriminatory reasons for their actions: (1) Plaintiff demonstrated a pattern of insubordination and unreliability in his final few months of employment; (2) the internal audit of Vizient raised legitimate concerns about Plaintiff's

---

[8] The Court notes for the purposes of the record that Defendant acknowledge this construction of Plaintiff's letter in their Reply brief (Doc. 41 at 9.)

10

claimed savings for Defendants; (3) Plaintiff's decision to enter into the Crown Laundry Contract obligated Defendant to multiple competing contracts at the same time; (4) Plaintiff attempts to circumnavigate the hospital chain of command; and (5) Plaintiff's letter in which he told Mr. Byers that he wanted to "part ways" with SGMC. (Doc. 12-1 at 13.)

In response Plaintiff contends that there is no record evidence of insubordination or unreliability other than unwarranted disciplinary actions. (Doc. 22 at 11.) That the Vizient audit did not review Plaintiff's records and invoices. (*Id.*) That Plaintiff had authority to enter into the Crown Laundry contract. (*Id.*) And that Plaintiff had not been attempting to circumnavigate the hospital chain of command when he had a hallway discussion with Ronnie Dean, SGMC's CEO. (*Id.*) The Court also notes for the purposes of the record that Plaintiff did not respond to Defendant's contention that the letter indicating that Plaintiff wished to part ways with Defendants was another legitimate reason for termination.

Plaintiff's responses are insufficient, however, because "[o]nce a defendant has offered a legitimate, non-discriminatory reason for an adverse employment action, the employee must show that the reason was a pretext and that unlawful discriminatory animus was the actual motivation." *Reed v. Forney Indus*, 800 Fed. Appx. 782, 786 (11th Cir. 2020) (citing *Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).). Stated otherwise, once an "employer proffers more than one legitimate, non-discriminatory reason, the plaintiff must rebut *each* of the reasons to survive a motion for summary judgment." *Garcia v. DS Waters of Am., Inc.,* 372 Fed. Appx. 925, 827 (11th Cir. 2010)(citing *Chapman*, 229 F.3d at 1030.).) A legitimate non-discriminatory reason proffered by the employer is not a "pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (citation omitted).

While this Court generally agrees with Plaintiff that there was insufficient evidence of insubordination or attempts to circumnavigate the hospital's chain of command, Plaintiff failed to rebut Defendant's legitimate, non-discriminatory reasons for terminating plaintiff. Those legitimate, non-discriminatory reasons for terminating plaintiff include (1) the fact that the Vizient audit raised legitimate concerns about Plaintiff's claimed savings, (2) that Plaintiff's decision to enter into the Crown Laundry Contract obligated Defendant to multiple competing

11

contracts at the same time and (3) that Plaintiff had informed Mr. Byers that he wished to "part ways" with SGMC.

Turning to Defendant's proffered reason that the Vizient audit raised legitimate concerns about Plaintiff's claimed savings. (Doc. 12-1.) While Plaintiff focuses on the fact that the Vizient audit "reviewed Vizient's records and invoices, not [Plaintiff's]" (Doc. 22 at 11) Plaintiff's response misses the point. Plaintiff's response misses the point, because Defendant's concern was that Plaintiff had utilized Vizient's projected savings when claiming savings he secured for the Hospital. (Doc. 12-1 at 13.) If Plaintiff had in fact been utilizing Vizient's projected savings, as Defendant believed, Plaintiff's first year bonus of $49,500 would have been improperly calculated and Plaintiff would have been misleading Defendant into believing that he was saving them more than he in fact was. As such Plaintiff has not shown that the reason was false or that discrimination was the real reason.

Turning to Defendant's next proffered reason that Plaintiff's decision to enter into the Crown Laundry Contract obligated Defendant to multiple competing contracts at the same time. (Doc. 12-1 at 13.) While Plaintiff focuses on the dispute of material fact of whether Plaintiff had authority to enter into these contracts in the first place, Plaintiff's response once again misses the mark. (Doc. 22 at 11.) Plaintiff's response misses the mark, because while Defendant does contest Plaintiff's authority to enter into such contracts, the main issue was the fact that Plaintiff entering into this contract caused Defendant additional expense, because Defendant had been obligated to competing contracts. (Doc. 12-1 at 13.) Plaintiff's response never addresses the fact that the Crown Laundry contract ostensibly placed Defendant in a position where they lost money, but rather merely focuses on whether Plaintiff had the authority to enter into this contract in the first place. (Doc. 22.) As such Plaintiff has not shown that the reason was false or that discrimination was the real reason.

Turning to Defendant's final proffered reason for terminating Plaintiff, that Plaintiff had informed Mr. Byers that he wished to "part ways" with SGMC. (Doc. 12-1 at 13.) As stated *supra,* Plaintiff never responded to this legitimate non-discriminatory reason for terminating plaintiff. Accordingly, Plaintiff has not shown that the reason was false or that discrimination was the real reason.

More importantly, however, Plaintiff has presented no evidence showing that his age was the real reason he was fired. While Plaintiff notes that he was replaced by a "substantially younger, less experienced employee who could save the hospital money by accepting a significantly lower salary or bonus structure, based on that lack of experience," at no point does Plaintiff posit that his age was the reason he was fired. (Doc. 22 at 13.) In fact, Plaintiff admits that at no point did "anyone ever suggest or tell [Plaintiff] that his age was a factor in the end of his employment" that nobody ever made any ageists comments to Plaintiff, and that Plaintiff had never made any complaints that he thought he was being discriminated against on the basis of his age. (Doc. 12-2 ¶ 91-94 & 22-1 ¶ 91-94.)

Accordingly, as Plaintiff cannot establish that age discrimination was the real reason for his termination, Defendants' Motion for Summary Judgment on Plaintiff's Age Discrimination Claim is **GRANTED**.

### II. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Georgia Whistle Blower Act Claim.

Turning next to Defendant's Motion for Summary Judgment on Plaintiff's Georgia Whistle Blower Act claim. (Doc. 12.) The Court declines to exercise supplemental jurisdiction over Plaintiff's state law whistle blower claims at this time, as the Court has resolved all the federal causes of action in this case. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Georgia Whistle Blower Act claim is **DENIED as MOOT** (Doc. 12) and Plaintiff's Georgia Whistle Blower Act claim is **DISMISSED WITHOUT PREJUDICE**.

### CONCLUSION

In summary, Defendant's Motion for Summary Judgment (Doc. 12) is **GRANTED in part and DENIED in part as MOOT**. Defendant's Motion (Doc. 12) is **GRANTED** as Plaintiff's Age Discrimination Claim but **DENIED as MOOT** as to Plaintiff's Age Discrimination Retaliation and Plaintiff's Georgia Whistleblower Act claims.

**SO ORDERED**, this 15th day of March 2023.

                                                                                 /s/ W. Louis Sands
                                                                                 **W. LOUIS SANDS, SR. JUDGE**
                                                                                 **UNITED STATES DISTRICT COURT**